UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**MARY F. FARRIS,**
                            **Plaintiff**

v.                                          **Civil Action No.**
                                            **3:05CV77-J**

**JO ANNE B. BARNHART, Commissioner**
 **Social Security Administration,**
                            **Defendant**

## MEMORANDUM OPINION

This case presents plaintiff Mary Farris' challenge to the decision of the Commissioner denying her claim to disability insurance benefits. After examining the materials of record, the arguments of the parties and the applicable authorities, the Court is of the opinion that the decision of the Commissioner should be affirmed.

Ms. Farris filed her application in August of 2002, alleging that she had been unable to engage in any substantial gainful employment since September of 2001. After a hearing, the Administrative Law Judge ("ALJ") determined that plaintiff suffered from severe impairments that prevented her from returning to her past relevant work, but that she retained the residual functional capacity for a significant range of light work.

The disability determination process consists of five steps. Wyatt v. Secretary, 974 F.2d 680 (6th Cir. 1992). These steps are approached sequentially, and a finding at any step that is adverse to the claimant terminates the process:

   1.  The claimant must not be engaged in substantial gainful activity.

   2.  The alleged disabling impairment must be "severe," meaning that it significantly

1

limits the individual's ability to do basic work activities necessary for most jobs, such as walking, standing, sitting, lifting, seeing, hearing and speaking.  20 CFR Section 416.921.

    3.  If the claimant has a medical condition that meets or exceeds the impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations (often referred to as "the Listings"), the evaluation terminates and the claimant is conclusively presumed to be disabled. Lankford v. Sullivan, 942 F.2d 301 (6th Cir. 1991).

    4.  The claimant must be unable to do his or her past relevant work.

    5.  If the claimant shows inability to do the past relevant work, the Commissioner must come forward with evidence to show that the claimant can still perform a significant number of jobs.  Born v. Secretary, 923 F.2d 1168 (6th Cir. 1990).

    If the Commissioner's decision is supported by substantial evidence, the reviewing Court must affirm.  Studaway v. Secretary of HHS, 815 F.2d 1074, 1076 (6th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Jones v. Secretary, 945 F.2d 1365 (6th Cir. 1991).  The Court's obligation to affirm in such a case exists regardless of whether we would resolve the disputed issues of fact differently, and regardless of whether there exists substantial evidence to support the opposite conclusion.  Stanley v. Secretary, 39 F.3d 115 (6th Cir. 1994), Tyra v. Secretary, 896 F.2d 1024 (6th Cir. 1990), Mullen v Brown, 800 F.2d 535, 545 (6th Cir. 1986).

    Ms. Farris suffers from relapsing-remitting multiple sclerosis ("MS").  She complains that the ALJ erred in evaluating her credibility regarding her fatigue and other subjective symptoms, and that the ALJ mishandled the opinions of her treating physicians.

    A claimant's subjective assertions are not sufficient standing alone.  20 C.F.R. Sec.

404.1529(a), King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984). If there is objective medical evidence of an underlying medical condition, the ALJ is required to determine whether objective medical evidence confirms the severity of the allegations. Stanley v. Secretary, 39 F.3d 115, 117 (6th Cir. 1994), Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994), Jones v. Secretary, 945 F.2d 1365, 1369 (6th Cir. 1991); Duncan v. Secretary, 801 F.2d 847, 853 (6th Cir. 1986).

A significant consideration in the evaluation of subjective symptoms is the credibility of the claimant. Villareal v. Secretary, 818 F.2d 461, 463 (6th Cir. 1987). "Determination of credibility ... rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant ... is invaluable and should not be discarded lightly." Gaffney v. Bowen, 825 F.2d 98, 101 (6th Cir. 1987). An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." Moon v. Sullivan, 923 F.2d 1175, 1183 (6th Cir. 1990). Stated another way, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." Walters v. Commissioner, 127 F.3d 525, 532 (6th Cir. 1997).

Nonetheless, the ALJ's credibility assessment must be supported by substantial evidence. Walters v. Commissioner, 127 F.3d 525 (6th Cir. 1997). Furthermore, if the ALJ rejects the claimant's testimony as not credible, he or she must state reasons for doing so. Auer v. Secretary, 830 F.2d 594, 595 (6th Cir. 1987).

The ALJ stated that he rejected Ms. Farris' claims of total disability because the treating sources did not report "neurological findings of significance," there was an absence of objective findings to corroborate her complaints of numbness, and no treating specialist has suggested Ms.

3

Farris should lie down each day or otherwise imposed any specific restrictions. The ALJ also noted his own observations of Ms. Farris, stating that she appeared to have no difficulty sitting or walking, and appeared to have no difficulty with concentration, focus or memory. Tr. 18.

Ms. Farris originally complained to her treating physician of paresthesias in her lower extremities, saying it felt as though she was wearing lead boots, and that she felt "a little clumsy." Nonetheless, she had good strength and coordination and her station and gait were normal. Tr. 193. Dr. Sutkamp referred her to neurologist Jeffrey Frank, MD, who recorded Ms. Farris' reports of "subjective" numbness, but observed "no objective focal deficits on neurological examination." Tr. 160.

Dr. Frank made the MS diagnosis in March of 2000 on the basis of an abnormal lumbar puncture and an abnormal MRI "suggestive for demyelinating disease." Tr. 155. At that time, Dr. Frank explained to her that her complaints of fatigue and difficulties with concentration and memory were not unusual with MS. In July and October of 2000 and in January of 2001, Ms. Farris saw another neurologist, Lynn Simon, MD, who recorded Ms. Farris' continuing complaints of fatigue and vision problems. Dr. Simon also noted Ms. Farris' reports of numbness in her hands and feet, but neurological examination failed to support those complaints: There was no drift or tremor; there was no difficulty in finger to nose touching, the gait was stable; and Ms. Farris could feel vibration distally. Tr. 147.

Neither Dr. Frank's records nor Dr. Simon's records include any Kurtzke Scale evaluations. None of the examinations demonstrated nystagmus, and visual fields were intact. In June of 2001, Dr. Sutkamp accepted the MS diagnosis, but noted as well, "her disease burden is quite minimal and I think, in all likelihood, we will be able to make adjustment to a

medication with less side effects." Tr. 145. Dr. Sutkamp also opined that the "bulk of this patient's symptoms" were not from MS, but from her cervical and lumbar pain syndrome. Id. This impression of "minimal" disease burden is echoed in some of the other medical records. For example, Dr. Simon recorded in July of 2000, "I thought she was *a tad bit* uncoordinated on finger-to-nose in the left hand" [emphasis added]. Tr. 152. In March 2002, Ms. Farris told neurologist Robert Tillett, MD, that "sometimes she felt like her right leg wasn't quite as strong." Tr. 250. In October of 2001, Dr. Tillett noted "She had a follow-up MRI scan in August which actually looked pretty good. Visual evoked potentials showed some mild delay." Tr. 252.

The substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6 th Cir.1986). Significantly, under this standard, this Court is not to resolve conflicts in evidence and may not decide questions of credibility. See Garner v. Heckler, 745 F.2d 383, 387-88 (6th Cir.1984). The record in this case shows that Ms. Farris suffers from the frustrating, and often progressive, symptoms of MS, but it does not clearly show that those symptoms prevent her from engaging in any substantial gainful activity. The record includes evidence that *could* lead a decisionmaker to find that she was disabled, but the question that must be asked on appeal is whether the record contains substantial evidence to support the decision that the Commissioner *did* make.

The Court concludes that the record does not compel a finding of disability. While treating physicians have referred to her inability to work, there is ample evidence to support the

5

ALJ's conclusion that those references were based on Ms. Farris' own reports that she could not work, and were not based on objective evidence. The record includes repeated references to mild or moderate symptoms. When all of this evidence is added to the ALJ's opportunity to observe the witness and hear her testify, the Court concludes that there was no error in the ALJ's evaluation of credibility and no error in the handling of the treating physicians' opinions.

      Ms. Farris also contends that there is an inconsistency between the ALJ's determination that she could not perform her past work and his determination that she could perform work in a clean environment at the light exertional level. The Court agrees that this is somewhat puzzling, given the absence of expert testimony that a person with the restrictions identified by the ALJ would be unable to perform the types of jobs Ms. Farris previously did. Nonetheless, "puzzling" does not equate with "erroneous," and if there was error, it was surely harmless. The record supports the limitations identified by the ALJ, and those limitations are consistent with a significant number of jobs identified by the vocational expert.

      An order in conformity has this day entered.